# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br>　vs.<br>YAHAIRA VANESSA HIGAREDA and<br>ADAM RAMIREZ,<br><br>　　　　　　　　　　Defendants. | CASE NO. 07cr487WQH<br><br>ORDER |

HAYES, Judge:

The matters before the Court are: 1) the Motion to suppress statements (#21) filed by Defendant Yahaira Vanessa Higareda, 2) the Motion to suppress evidence seized pursuant to searches (#28) filed by Defendant Yahaira Vanessa Higareda, and 3) the Motion filed by Defendant Adam Rameriz for Joinder (#30) in Motion to suppress statements and evidence filed by co-defendant Higareda.

**FACTS**

On February 15, 2007 police officers from the City of Chula Vista responded to a citizen call regarding suspected drug activity at a residence at 653 Seavale Street, Apartment 6A, Chula Vista, California. Police Officer Colin Evans arrived at the apartment along Police Officer Juan Vasquez and a trainee officer. Police Officer Vasquez had been at Apartment 6A on at least three prior occasions to investigate reports of domestic violence and knew that the leaseholder of the apartment was a woman named Veronica.

Officer Evans knocked on the front door. Defendant Rameriz opened the door. Officer Evans asked Defendant Rameriz if he lived there. Defendant Rameriz responded no. Officer

Evans asked Defendant Rameriz who lived there. Defendant Rameriz responded I don't know. Officer Evans entered the apartment. Officer Evans testified that the living room was crowded with Hispanic males. Officer Vasquez spoke with the individuals in the living room and Officer Evans turned his attention to the people in the kitchen area who spoke English. Officer Evans called the United States Border for assistance and took five individuals who indicated they were United States citizens or had legal documents to reside in the United States outside the apartment.

United States Border Patrol Agents Rojas and Alvarez responded to the apartment. Agents Rojas and Alvarez questioned the five individuals who had been taken outside the apartment, including Defendant Rameriz and Defendant Higareda. Agent Rojas entered the apartment and interviewed the individuals inside who all admitted to being nationals of Mexico with no documents that would allow them to enter and remain in the United States legally.

Defendant Higareda and Defendant Rameriz made statements outside the apartment and later at the Chula Vista Border Patrol Station. Higareda stated that she lived at the apartment with her friend Veronica. Rameriz stated that Higareda lived at the apartment and that he opened the door for the officers. Defendant Higareda and Defendant Rameriz are charged with three counts of bringing an alien to the United States for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 (Counts 1, 2, and 3) and three counts of harboring aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (v)(II).

## CONTENTIONS OF THE PARTIES

Defendant Higareda contends that all evidence obtained as a direct result of the search of 653 Seavale Street, Apartment 6A must be suppressed because the warrantless entry and search of the apartment violated her rights under the Fourth Amendment of the United States Constitution. Defendant Higareda contends that the warrantless entry and search of the apartment falls within no exception to the warrant requirement. Defendant Rameriz joins in the motion to suppress the evidence.

The Government contends that Defendant Rameriz gave consent to Officer Evans to enter the apartment and that Defendant Rameriz had actual or apparent authority to consent to

the entry and search. The Government contends that Defendant Rameriz could have declined to let the officers enter or deferred to Defendant Higareda. In the alternative, the Government contends that Defendant Rameriz has no standing to challenge the entry and search.

**ANALYSIS**

*Standing*

The Government contends that Defendant Rameriz does not have standing to contest the entry and search of the apartment. The Government contends the evidence in this case establishes that the Defendant Rameriz was an invited guest with no reasonable expectation of privacy in the premises.

Defendant Rameriz contends that the Government is not entitled to argue that the warrantless entry into the apartment was permissible because he had common authority over the apartment and consented to the entry and, in the alternative, argue that Defendant Rameriz does not have standing to contest the warrantless entry into the premises. Defendant Rameriz contends that the Government cannot use the same facts to claim the lawfulness of the entry and that Defendant Rameriz has no standing to contest the lawfulness of the entry and search. Defendant Rameriz contends that he has standing to contest the warrantless entry and search because "he de facto spent the night there doing drugs and hanging out with his friends with the permission of a lawful resident of the apartment Co-defendant Higareda." (Defendant Rameriz Memorandum Re: (1) Defendant's Standing to Contest Unlawful Police Warrantless Entry and Search, Doc # 37 at 3-4.)

Defendant Rameriz cannot challenge the search of the apartment on Fourth Amendment grounds unless he demonstrates that he has standing to do so, *i.e.*, that he had a legitimate expectation of privacy in those places. *See Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421 (1978). The Government has not waived its right to challenge Defendant Rameriz' expectation of privacy by not raising the issue prior to the evidentiary hearing. *Cf. United States v. Bagley*, 772 F.2d 482, 489) (9th Cir. 1985) ("There exists respectable authority to support the determination that the government has waived its right to challenge Bagley's expectation of privacy for the first time on appeal."). The Government is not precluded from arguing that

the Defendant Rameriz aided and abetted bringing in illegal aliens for financial gain or harboring illegal aliens by taking the position that Defendant Rameriz has no legitimate expectation of privacy in the apartment. *Cf. United States v. Issacs*, 708 F.2d 1365, 1368 (9th Cir. 1983) (government is not permitted to argue possession of journals at trial by the defendant but deny expectation of privacy where the circumstances of the case make such positions necessarily inconsistent.)

To demonstrate a "legitimate expectation of privacy," the defendant must show that he had an actual subjective expectation of privacy in the apartment and that society is prepared recognize that expectation. *See United States v. Davis*, 932 F.2d 752, 756 (9th Cir. 1991). Whether a defendant has standing to contest the legality of a search presents a mixed question of fact and law. *See United States v. Singleton*, 987 F.2d 1444, 1447 (9th Cir.1993).

In *United States v. Armenta*, 69 F.3d 304 (9th Cir.1995), the Court of Appeals explained:

> Armenta argues that he has standing to challenge the search at the Clifford house because he was an overnight guest at the house. *See Minnesota v. Olson,* 495 U.S. 91, 96-97, 110 S.Ct. 1684, 1687-88, 109 L.Ed.2d 85 (1990) (defendant's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable"). In support of this argument, Armenta presented the following evidence: his own sworn declaration stating that he was an overnight guest; Kraus' testimony that Armenta had spent the night inside the house; the fact that his wallet, baptismal certificate, and social security card application were found inside the house; and his attorney's declaration that Batiz-Guzman would testify that "Armenta was a guest at the Clifford house and had run of the house."
>
> The district court held that this evidence was insufficient to demonstrate that Armenta was, in fact, an "overnight guest" at the Clifford house; the court accordingly held that Armenta lacked standing to challenge the search of the house. For the following reasons, we affirm.
>
> Armenta's bald assertion that he was an overnight guest (and Batiz-Guzman's statement to that effect) is not sufficient to establish that he had a legitimate expectation of privacy in the house. See United States v. Carr, 939 F.2d 1442, 1445-46 (10th Cir.1991) (defendant's statement, without further proof, that he had been staying for three weeks in hotel room registered to another was not sufficient under Olson ).
>
> The totality of Armenta's situation is vastly different from that of overnight guests who do have legitimate expectations of privacy in their hosts' homes. In *Davis,* for example, in which we found a legitimate expectation of privacy, the guest had a key to the apartment, stored things there, and was free to come and go as he pleased. The guest took the precaution of storing his items in a locked safe in the owner's apartment to ensure his privacy. The guest had previously

> lived in the apartment and continued to pay a portion of the rent. 932 F.2d at 757. In this case, by contrast, there is no identifiable host who could or did give Armenta permission to stay at the Clifford house. Moreover, Armenta had only a wallet and two other documents in the house, but no clothing or other indicia that he was even temporarily living or staying there. He also took no precautions to ensure his own privacy in the house. Armenta's situation does not suggest an overnight guest of the sort recognized by this court in *Davis* or of the sort envisioned by the Supreme Court in *Olson, i.e.,* one who is in the owner's home "with the permission of his host, and one who is engaging in a longstanding social custom that serves functions recognized as valuable by society. 495 U.S. at 98-99, 110 S.Ct. at 1689. At most, the evidence suggests that Armenta was legitimately on the premises, which is insufficient to demonstrate a legitimate expectation of privacy. See Olson, 495 U.S. at 97, 110 S.Ct. at 1688 (citing Rakas, 439 U.S. at 142-48, 99 S.Ct. at 430-33).We hold that Armenta has failed to demonstrate a legitimate expectation of privacy in the Clifford house, as an overnight guestor otherwise. Therefore, we affirm the denial of Armenta's suppression motion as to the house.

*Id.* at 308-309 (footnote omitted).

The evidence in this case establishes that the Defendant Rameriz "de facto spent the night [at the apartment] doing drugs and hanging out with his friends with the permission of a lawful resident of the apartment Co-defendant Higareda." (Doc # 37 at 3- 4.) This evidence supports only the inference that Defendant Rameriz was legitimately on the premises, which is insufficient to demonstrate a legitimate expectation of privacy. *See Amenta*, 69 F.3d at 309. Defendant Rameriz did not live at the apartment. The evidence establishes that Defendant Rameriz was not an overnight guest at the apartment such that he had "an expectation of privacy in the home that society is prepared to recognize as reasonable." *Minnesota v. Olson,* 495 U.S. 91, 96-97. The evidence establishes only that Defendant Rameriz came to the apartment and remained with permission of Defendant Higareda in order to do drugs and hang out with friends, that the night passed, and that Defendant Rameriz was still there in the morning. Under these facts, Defendant Rameriz did not have a legitimate expectation of privacy in the residence of Defendant Higareda that society is prepared to recognize as reasonable.

Defendant Rameriz does not have standing to assert any Fourth Amendment rights in the entry and search of the apartment. Fourth Amendment rights are personal rights which may not be vicariously asserted. Standing is required in the exclusionary rule context because the "'additional benefits of extending the rule' to persons other than the ones subject to the

illegal search are outweighed by the 'further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all evidence which exposes the truth.'" *United States v. Ceccolini*, 435 U.S. 268, 276, 98 S.Ct. 1054, 1060 (1978) quoting *Alderman v. United States*, 394 U.S. 165, 174-175, 89 S.Ct. 961, 967 (1969). Defendant Adam Rameriz' Motion for Joinder (#30) in Motion to suppress statements and evidence filed by co-defendant Higareda is denied.

*Entry and Search*

"The warrantless entry and search of the apartment is *per se* unreasonable and absent exigency or consent, warrantless entry into the home is impermissible under the Fourth Amendment." *United States v. Reid*, 226 F.3d 1020, 1025 (9th Cir. 2000) quoting *United States v. Shaibu*, 920 F.2d 1423, 1425 (9th Cir. 1990). The United States Supreme Court has explained that "the Fourth Amendment draws 'a firm line at the entrance to the house.'" *Kyllo v. U.S.*, 533 U.S. 39, 40, 121 S.Ct. 2038, 2046 (2001) quoting *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371 (1990).

The Government's claim that Defendant Rameriz gave the officers consent to enter and search the apartment is not supported by the testimony of any officer. The existence of consent "is not lightly to be inferred and the government always bears the burden of proof to establish the existence of effective consent." *Reid*, 226 F.3d at 1025 quoting *Shaibu*, 920 F.2d at 1426. There was no evidence at the hearing that Defendant Rameriz gave consent to the officers to enter and search or that the officers believed that Rameriz had apparent or actual authority to give consent.

There is no evidence in this case to support any exception to the warrant requirement. The Court concludes that the warrantless entry and search of Defendant Higareda's residence violated her Fourth Amendment rights.

*Remedy*

In the event that the Court finds that the entry and search by the Chula Vista police officers were in violation of the Defendant's Fourth Amendment rights, the Government asserts that the Court should not exclude the testimony of the three material witnesses found

in the apartment notwithstanding the illegal search.[1] The Government concedes that the exceptions to the exclusionary rule for inevitable discovery and independent source are not applicable in this case and that the leading cases in this circuit on the remaining exception for attenuation cuts against its position. The Government asserts that the testimony of the material witnesses should not be excluded because the police officers were not motivated to search the apartment and had not targeted the apartment for investigation.

Defendant Higareda contends that all of the evidence obtained as a direct result of the illegal entry and search, including any physical evidence seized and the statements of all individuals interviewed on that day flowed directly from the initial illegal entry into the apartment and should be suppressed.

The exclusionary rule, which bars the admission of evidence obtained in violation of the United States Constitution, extends beyond the direct products of unlawful action to indirect evidence derived from the illegal conduct. *See Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 416 (1963). In *Wong Sun,* the United States Supreme Court concluded that "verbal evidence which derives so immediately from an unlawful entry and unauthorized arrest as the officers' actions in the present case is no less 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion." 371 U.S. at 485, 83 S.Ct. at 416. The Court explained that "the policies underlying the exclusionary rule [do not] invite any logical distinction between physical and verbal evidence." 371 U.S. at 486, 83 S.Ct. at 416. There is, however, no "*per se* or 'but for' rule that would make inadmissible any evidence, whether tangible or live-witness testimony, which somehow came to light through a chain of causation that began with an illegal arrest." *Ceccolini*, 435 U.S. at 276, 98 S.Ct. at 1060.

In *Hudson v. Michigan*, __U.S.__, 126 S.Ct. 2159 (2006), the Supreme Court held that a violation of the knock-and-announce rule where officers were the executing a search warrant did not require suppression of all of the evidence found in the search. The Supreme Court explained:

---

[1] The Government concedes that all evidence found inside the apartment and all statements of the Defendants should be excluded as to Defendant Higareda if the initial entry and search was not legal.

> . . . [E]xclusion may not be premised on the mere fact that a constitutional violation was a 'but-for' cause of obtaining evidence. Our cases show that but-for causation is only a necessary, not a sufficient, condition for suppression. . . [E]ven if the illegal entry here could be characterized as a but-for cause of discovering what was inside, we have never held that evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police. . . . Rather, but-for cause, or causation in the logical sense alone, can be too attenuated to justify exclusion. . . .
>
> Attenuation can occur, of course, when the causal connection is remote. Attenuation also occurs when, given a direct causal connection, the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained. The penalties visited upon the Government, and in turn upon the public, because its officers have violated the law must bear some relation to the purposes which the law is to serve.

126 S.Ct. at 2164 (citations and quotations omitted).

In *United States v. Rubalcava-Montoya*, 597 F.2d 140 (9th Cir. 1979), the defendants were convicted of transportation of illegal aliens after illegal aliens were discovered in the trunk of defendants' automobile following a checkpoint stop. The Court of Appeals concluded that there was insufficient evidence to establish probable cause to search the automobile and that the testimony of the aliens was not so attenuated from the illegal search as to render the evidence admissible. The Court of Appeals explained that

> ... the Supreme Court has rejected a per se rule of admission or exclusion even where a cause in fact relationship has been established. *United States v. Ceccolini*, . . . The Court held in *Ceccolini* that before testimony, as opposed to tangible evidence, will be excluded, a 'closer, more direct link between the illegality and (live witness) testimony is required.' Although the sufficiency of the attenuation turns on the facts of each case, a key element is whether the testimony is the product of the witness' independent act of will, neither coerced nor induced by the consequences of the illegal search.
>
> Nothing in the record of the case before us indicates that in the time between the search and the trial the witnesses made an independent decision to come forward to testify to rehabilitate themselves or to assist the trier of fact in arriving at the truth of the case, or for any other reason. The illegal aliens who testified against appellants not only were discovered as a direct result of the illegal search but were implicated thereby in illegal activity.

597 F.2d at 143; *see also United States v. Rameriz-Sandoval*, 872 F2d 1392 (9th Cir. 1989) (testimony of illegal aliens riding as passengers in a van was inadmissible as 'fruit of the poisonous tree' because police officers only questioned the van occupants as to their status after discovering evidence found during the course of an illegal search of the van).

In the case before the Court, the material witnesses are illegal aliens who "not only were

discovered as a direct result of the illegal search but were implicated thereby in illegal activity." 597 F.2d at 143. The material witnesses were released from prison on bond which requires them to appear for testimony at trial of the Defendants. The material witnesses were discovered as a direct result of the illegal entry and search. There is no evidence to suggest that they would have been discovered, in any case, or that the material witnesses made an independent decision to come forward. No time lapsed between the illegal entry and search and the discovery of the illegal aliens.

The police officers in this case came to the apartment to investigate a citizens' complaint and entered with no warrant or no valid exception to the warrant requirement. There are no facts from which this Court can conclude that the testimony of the material witnesses was too attenuated to justify exclusion. "Until a valid warrant has issued, citizens are entitled to shield 'their persons, houses, papers, and effects,' U.S. Const., Amdt. 4, from the government's scrutiny. Exclusion of the evidence obtained by a warrantless search vindicates that entitlement." *Hudson v. Michigan,* 126 S.Ct at 2165. The exclusion of the testimony of the material witnesses bears a direct relationship to the purpose that the warrant requirement is intended to serve. The Court concludes that the exclusionary rule bars the admission against Defendant Higareda of all evidence obtained as a result of the violation of her Fourth Amendment rights, including the testimony of the material witnesses.

## CONCLUSION

IT IS HEREBY ORDERED that 1) the Motion to suppress statements (#21) filed by Defendant Yahaira Vanessa Higareda is moot, 2) the Motion to suppress evidence seized pursuant to searches (#28) filed by Defendant Yahaira Vanessa Higareda is granted, and 3) the Motion filed by Defendant Adam Rameriz for Joinder (#30) in Motion to suppress statements and evidence filed by co-defendant Higareda is denied.

DATED: June 14, 2007

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge